USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 8/2/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LEANDRO MEDINA,

                Plaintiff,

v.

WASTE CONNECTIONS OF NEW YORK, INC., WASTE CONNECTIONS OF NEW YORK, INC. as a successor in interest, and WASTE CONNECTIONS OF NEW YORK, INC. as successor in interest to Progressive Waste Solutions Ltd. and Waste Connections, Inc.,

                Defendant.

No. 19-CV-291 (RA)

OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

Plaintiff Leandro Medina brings this action against Defendant Waste Connections of New York, Inc., Waste Connections of New York, Inc. as successor in interest, and Waste Connections of New York, In. as successor in interest to Progressive Waste Solutions Ltd. and Waste Connections, Inc. ("Waste Connections") for race- and national origin-based employment discrimination and retaliation. Before the Court is Defendant's motion to dismiss. For the reasons set forth below, the motion is granted in its entirety.

## BACKGROUND[1]

Plaintiff Leandro Medina, a Hispanic-American truck driver, was an employee of Defendant Waste Connections from July 14, 2015 through March 18, 2018. He was hired as a rear

---

[1] These facts are drawn from pleadings and affidavits submitted by the parties, and are construed in a light most favorable to Plaintiff. *See DiStefano v. Carozzi North Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001). The Court also takes judicial notice of Plaintiff's charge to the Equal Employment Opportunity Commission ("EEOC"). *See Jenkins v. St. Luke's-Roosevelt Hosp. Ctr.*, No. 09-CV-12, 2009 WL 3682458, at *5 (S.D.N.Y. Oct. 29, 2009).

load packer driver to load and haul waste for customer companies. Defendant provides non-hazardous waste collection, recycle, and landfill disposal services to commercial, industrial, municipal, and residential customers throughout the U.S. and Canada.

From the beginning of his employment with Defendant, Plaintiff allegedly "noticed that the treatment of Hispanic employees was much different from its treatment of its white crew performing the same duties." Compl. ¶ 13. Plaintiff claims that the following types of differential treatment occurred:

- "Rules were more strictly enforced against Hispanic workers when compared to white employees." *Id.* ¶ 14.
- "White employees were not marked as 'no show' when they did not appear for work, whereas Hispanic employees were always marked absent when they did not report for work." *Id.* ¶ 15.
- "White employees [we]re given the preferable and shortest routes as opposed to Hispanics." *Id.* ¶ 16.
- "White employees [we]re granted personal and vacation time without delay while Hispanic workers [we]re made to wait and are denied such time." *Id.* ¶ 17.
- "Supervisors raised their voice and yelled at Hispanic workers while speaking in an ordinary voice to white employees." *Id.* ¶ 18.[2]

More specifically, Plaintiff alleges eight different incidents to have occurred while he was employed by Defendant. First, he says he was denied paid sick days. On November 30, 2015, he filed for a sick day following the proper procedures, but upon receiving his paycheck, saw that November 30 was marked as a "no show" day. Plaintiff unsuccessfully attempted to correct this issue. On December 4, 2015, Plaintiff called in a second sick day because he had to renew his medical card for work. Again, he was marked as a "no show." On December 18, 2015, Plaintiff was told he had to work, despite having scheduled a day off for December 19, 2015. He became ill the night of December 18, went to Urgent Care in the morning of December 19, and received a

---

[2] In Plaintiff's EEOC charge, he further alleges that "White employees receive voucher for work boots more often, when the rule is that ALL employees should be receiving the same number of vouchers in the same time." Def. Decl., Ex. A ¶ 6.

doctor's note stating that he should not work that night. After Plaintiff called in sick, he was told he was fired. Although Plaintiff was ultimately reinstated, he claims he never received the sick day compensation to which he was entitled.

Second, Plaintiff asserts he was denied health benefits and a raise. On April 30, 2016, Plaintiff learned that Defendant had deactivated his health insurance. He later learned that on January 18, 2016, Defendant had—without Plaintiff's knowledge—changed his status from full- to part-time, even though his schedule remained the same. Defendant had restored his status to full-time on February 28, 2016. He was thus designated a part-time employee without health benefits for 40 days between January 18 and February 28. Due to this period of "part-time" employment, Plaintiff also lost his entitlement to a raise, as his Union contract specified that he was entitled to a raise after one year of employment, and periods of part-time employment apparently did not qualify. Other employees hired at the same time as Plaintiff did receive the specified raise. Furthermore, as a consequence of the temporary shift from full- to part-time status, Plaintiff incurred a penalty on his 2016 income tax return for a lapse in health insurance coverage.

Third, Plaintiff claims he was denied wages to which he was entitled. Although the Union contract required that drivers be paid double plus one paid day off for working on a holiday, Plaintiff never received these benefits for holidays he worked. Moreover, Defendant refused to pay Plaintiff for the Christmas holiday, despite Union employees' entitlement to paid holidays. Plaintiff also says he was denied full-time employment during his regular work days while white employees were given overtime work. Specifically, on several occasions he was given only three work days and was made to work on Saturdays, with days off on Tuesdays and Wednesdays, despite reassurances when he was hired that Saturdays would be his days off. Furthermore, on numerous occasions, Plaintiff arrived at his scheduled work time, was told there was no work to do, and was sent home. On one such occasion, Plaintiff was required to remain at work for a safety

training, was not allowed to clock in, and was sent home after the training without pay. Plaintiff was also unable to verify his hours when he was locked out of the paycheck system for over two months. None of the white employees, he claims, were locked out of the system. Once he reviewed his paychecks, Plaintiff noticed "many, many more uncompensated hours." *Id.* ¶ 35.

Fourth, Plaintiff claims Defendant denied his requests for vacation time. On November 8, 2015, January 15, 2016, and three unknown dates in March, April, and October 2016, Plaintiff asked for vacation time and was denied, while non-Hispanic and white drivers with less seniority than him were allegedly given four to six weeks of vacation time. Defendant refused to provide Plaintiff with any explanation after he asked for a written explanation of the denials. Because he was unable to receive any vacation time since he began working for Defendant in July 2015, Plaintiff applied at the beginning of November 2016 for three personal days in mid-January 2017 to take a short vacation with his family. In December, Plaintiff was told to wait until the middle of December for a decision on his request, and in mid-December he was again told to wait. On January 3, 2017, Plaintiff went to the HR office to inquire as to the status of his request, and on January 10th he received approval, but by then it was too late—the flight was in three days, and the price of the ticket had quintupled. Only Plaintiff's wife and son were able to take the trip, and Plaintiff lost the money he had paid in advance for an all-inclusive resort for three people.

Fifth, Plaintiff claims Defendant violated seniority policies by forcing him to work on holidays when less senior employees were not required to do so. Plaintiff's charge with the Equal Employment Opportunity Commission alleges that this occurred on New Year's holiday of 2015, "Labor Weekend" of 2016, and New Year's holiday of 2016. Def. Decl. Ex. A. ¶¶ 29–30.

Sixth, on May 1, 2016, after another car collided with Plaintiff's truck, his supervisor purportedly refused to provide him with a copy of the accident report and ordered him to go back

to work and finish his route. According to Plaintiff, "[t]he policy is that drivers involved in serious accidents are to be given the rest of the day off." *Id.* ¶ 48.

Seventh, Plaintiff claims, Defendant refused to provide necessary transportation for Plaintiff to perform his job. Near the end of 2017, Plaintiff had been reporting via public transportation to work at Defendant's Red Hook station but was unable to enter the facility due to apparent rules promulgated by the owner of the facility requiring him to enter in a motor vehicle. Plaintiff alleges that "[t]here is no requirement in the job description or in the collective bargaining agreement that requires Plaintiff to have his own vehicle." *Id.* ¶ 50. Defendant refused to provide him with transportation from the outside gate of the facility to the location where he clocks in and works. As a result, Plaintiff repeatedly had to wait outside the facility for up to an hour for Defendant to find someone to drive him into the facility, forcing Plaintiff to clock in late. Plaintiff says he was told that if he reported to work earlier without pay, "maybe he could get a ride from the Company when they get around to it." *Id.* ¶ 51.

Eighth, Plaintiff claims Defendant retaliated against him for complaining about mistreatment. As a result of the allegedly "constant harassment and discrimination," Plaintiff complained to HR, Defendant's headquarters, and Local Union 108 that he was receiving disparate treatment based on his Hispanic ethnicity. In response, Plaintiff was moved from full- to part-time employee status for several days without his knowledge or authorization. When he "reenter[ed]" the company, he received a different contract with different benefits, which left him without insurance for months. *Id.* ¶ 53.

Plaintiff resigned on March 18, 2018. As a result of work-related stress, he sought psychiatric care for the first time in his life, visiting a psychiatrist every three to four weeks, taking prescription medication, and participating in weekly therapy with a psychologist.

5

Plaintiff filed a charge with the EEOC on March 9, 2017 and, after receiving a right-to-sue letter on September 8, 2018, commenced this action against Defendant on December 18, 2018 in New York State Supreme Court, County of Bronx. On January 10, 2019, Defendant timely removed the action to this Court. On January 17, 2019, Defendant moved to dismiss Plaintiff's Complaint, to which Plaintiff did not serve an opposition.[3]

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009). Failure to oppose a motion to dismiss does not, by itself, justify dismissal. "Because a motion under Rule 12(b)(6) presents a pure legal question, based on allegations contained within the four corners of the complaint, the district court is equipped to make a determination on the merits." *Goldberg v. Danaher*, 599 F.3d 181, 183 (2d Cir. 2010). Accordingly, as with all Rule 12(b)(6) motions, when deciding an unopposed motion to dismiss the Court must "assume the truth of a

---

[3] After Defendant filed its motion to dismiss, the Court granted Plaintiff's request for an extension of time to amend his complaint. Dkt. 13. Plaintiff ultimately opted not to file an amended complaint. Instead, over four months after the time for Plaintiff to file an opposition brief to Defendant's motion to dismiss expired, and after numerous requests by the Court for an update on the status of this case from Plaintiff's counsel, Plaintiff requested a briefing schedule on Defendant's motion to dismiss. The Court ordered Plaintiff to show cause no later than June 27, 2019 why he should be granted leave to file an opposition to Defendant's motion after the deadline for this filing had expired. Plaintiff failed to show cause by this date. On June 28, 2019, Plaintiff's counsel sought an extension of time to file an opposition brief, while acknowledging he had "no excuse" for his delay. The Court denied the application. Dkt. 24.

pleading's factual allegations and test only its legal sufficiency." *McCall v. Pataki*, 232 F.3d 321, 322 (2d Cir. 2000).

## DISCUSSION

### I. Timeliness

#### A. Title VII Claims in the Fourth, Fifth, and Sixth Causes of Action

For a Title VII claim to be timely, the alleged discriminatory conduct must have occurred within either 180 or 300 days prior to the filing of a charge with the EEOC. 42 U.S.C. § 2000e–5(e)(1); *see Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 126 (2d Cir. 2010). "When a plaintiff fails to file a timely charge with the EEOC, the claim is time-barred." *Butts v. City of N.Y. Dep't of House. Pres. & Dev.*, 990 F.2d 1397, 1404 (2d Cir. 1993). Plaintiff filed his EEOC charge on March 9, 2017. *See* Def. Decl., Ex. A. As such—and because the Court treats 300 days as the operative time limit[4]—any acts that occurred prior to May 13, 2016 are time-barred. The alleged denial of paid sick days, the deactivation of Plaintiff's health care and loss of entitlement to a raise, four of the six vacation denials, the forcing of Plaintiff to finish his work route after he was in an accident, and the false accusation of a traffic light violation are all alleged to have occurred before May 13, 2016 and may not form the basis of Plaintiff's Title VII claims. The same applies to any wage discrimination and holiday scheduling allegations that occurred before May 13, 2016. The Court notes that several allegations—particularly under the subheading of "Hours and Wage Discrimination," Compl. ¶¶ 29–35—fail to provide dates, making it difficult to determine whether

---

[4] Section 2000e-5(e)(1) sets 180 days as the standard time limit, with an exception where "the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief" from unlawful employment practices, in which case the time limit extends to 300 days. 42 U.S.C. § 2000e–5(e)(1). "Second Circuit case law is somewhat unclear concerning whether the 300-day limit applies automatically in New York, to all Title VII claims, because of the existence of a state anti-discrimination agency." *Shums v. New York City Dep't of Educ.*, No. 04-CV-4589, 2006 WL 8437471, at *5 n.2 (E.D.N.Y. Apr. 3, 2006) (citing cases). In light of this ambiguity, the uncertainty over whether Plaintiff initially instituted proceedings with the state anti-discrimination agency, and the lack of any argument from Defendant on this point, the Court treats 300 days as the operative time limit for purposes of this initial motion.

7

or not they are barred by the statute of limitations.[5] Accordingly, if Plaintiff opts to amend his complaint, he must provide specific dates for allegations in order for the Court to determine whether they are timely. *See Van Brunt v. Rauschenberg*, 799 F. Supp. 1467, 1472 (S.D.N.Y. 1992) (ordering, pursuant to Fed. R. Civ. P. 12(e), the filing of a new complaint with more precise dates).

The Court does note, however, two ways in which the time-barred acts may remain relevant to the assessment of Plaintiff's Title VII claims on their merits. First, to the extent Plaintiff alleges a continuing violation—such as a hostile work environment—he need only show that part of the violation took place within the limitations period. *See Petrosino v. Bell Atl.*, 385 F.3d 210, 220 (2d Cir. 2004). Second, time-barred events may also be considered as "background evidence in support of a timely [discrimination] claim." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). Thus, "evidence of an earlier alleged [discriminatory or] retaliatory act may constitute relevant background evidence in support of [a] timely claim . . . [and] may be considered to assess liability on the timely alleged act." *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 176–77 (2d Cir. 2005) (internal quotation marks and citation omitted).

### B. NYCHRL Claims in the First, Second, and Third Causes of Action

For a NYCHRL claim to be timely, it must be brought within three years of the date the claim accrues. N.Y.C. Admin. Code § 8-502(d); *see Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 765 (2d Cir. 1998). The earliest dates of alleged conduct are in November and December of 2015, and Plaintiff brought this action on December 18, 2018, so only a handful of alleged incidents are potentially time-barred by New York's three-year rule. Even these incidents from

---

[5] While Plaintiff's Complaint does not provide dates for instances where he was "forc[ed]" to work on holidays when less senior employees were not required to do so, Compl. ¶ 47, his EEOC charge alleges that this occurred on New Year's holiday of 2015, "Labor Weekend" of 2016, and New Year's holiday of 2016. Def. Decl. Ex. A. ¶¶ 29–30.

8

2015 are not barred, however, due to a year-and-a-half pause on the statute-of-limitations clock, triggered by the EEOC's consideration of Plaintiff's charge. Although the Second Circuit has not decided whether filing an EEOC charge tolls the NYCHRL or NYSHRL statutes of limitations, numerous courts in this Circuit—including this one, *see George v. Prof'l Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 436 (S.D.N.Y. 2016)—have determined that it does. *See Sesay-Harrell v. NYC Dep't of Homeless Servs.*, No. 12-CV-925, 2013 WL 6244158, at *12 (S.D.N.Y. Dec. 2, 2013) (collecting cases). Nor did the Second Circuit's decision in *Castagna v. Luceno*, 744 F.3d 254 (2d Cir. 2014), holding that the filing of an EEOC charge does not toll the time for filing state *tort* claims, resolve this issue. Indeed, at least two courts in this district have found *Castagna* inapplicable to the question of tolling for NYSHRL and NYCHRL claims. *See, e.g., Cameron v. N.Y. City Dep't of Educ.*, No. 15-CV-9900, 2018 WL 1027710, at *12 (S.D.N.Y. Feb. 21, 2018); *Schneider v. Wal-Mart Stores, Inc.*, No. 16-CV-2010, 2019 WL 294309, at *3 (S.D.N.Y. Jan. 23, 2019). Thus, when Plaintiff filed an EEOC charge, the three-year statute of limitations on his city law claims was paused while the EEOC considered the charge.

Here, Plaintiff filed the charge on March 9, 2017, and received a right-to-sue letter on September 8, 2018. In light of this tolling period, less than three years had passed between the accrual of all claims alleged in the Complaint and its filing, and Plaintiff's claims are timely under the NYCHRL.

## II. Administrative Exhaustion

Defendant next argues that Plaintiff's federal claims have not been administratively exhausted.[6] "Before an aggrieved party can assert a Title VII claim in federal court, he is generally

---

[6] "Unlike Title VII, the NYSHRL and NYCHRL do not require exhaustion of administrative remedies." *Hernandez v. New York City Dep't of Corp. Counsel*, No. 94-CV-9042, 1997 WL 27047, at *10 (S.D.N.Y. Jan. 23, 1997).

9

required to exhaust the administrative remedies provided by the statute." *Duplan v. City of New York*, 888 F.3d 612, 622 (2d Cir. 2018). "The purpose of this exhaustion requirement is to give the administrative agency the opportunity to investigate, mediate, and take remedial action." *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 384 (2d Cir. 2015) (citation omitted). Thus, "[t]o bring a claim under Title VII, a plaintiff must first have filed a complaint with the Equal Employment Opportunity Commission ('EEOC') or a state equivalent." *Burgis v. New York City Dep't of Sanitation*, 798 F.3d 63, 71 (2d Cir. 2015).

Although "[e]xhaustion is ordinarily 'an essential element' of a Title VII claim, . . . [c]laims not raised in an EEOC complaint . . . may be brought in federal court if they are 'reasonably related' to the claim filed with the agency." *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006) (citation omitted). This Circuit has recognized that "[a] claim is considered reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made." *Fitzgerald v. Henderson*, 251 F.3d 345, 359–60 (2d Cir. 2001). A claim may also be reasonably related if the complaint is "one alleging retaliation by an employer against an employee for filing an EEOC charge" or if the complaint "alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Terry v. Ashcroft*, 336 F.3d 128, 151 (2d Cir. 2003).

Plaintiff's Sixth Cause of Action is based entirely on allegations of retaliatory conduct that are not mentioned in the EEOC charge. Unlike cases where a plaintiff alleges retaliation carried out in response to the filing of an EEOC charge itself, *see Duplan*, 888 F.3d at 621—where it would be impossible for the plaintiff to have alleged such retaliation in the charge—here Plaintiff's Complaint alleges that Defendant retaliated against him for complaining "to HR, Headquarters, and Local Union 108." Compl. ¶ 53. "This is not a case in which the plaintiff alleges retaliation for filing the very EEO charge that served to exhaust the plaintiff's other claims." *Mathirampuzha*

*v. Potter*, 548 F.3d 70, 78 n.7 (2d Cir. 2008). Nor can the Court conclude more generally that the retaliation claim is "reasonably related" to conduct initially alleged in the EEOC charge, as the charge contains no allegations of adverse action taken against Plaintiff for complaining to any authority about his treatment. This claim of retaliation therefore appears to be unexhausted.

Defendant also argues that Plaintiff's claims relating to the Red Hook facility transportation issues and his constructive discharge have not been exhausted. Based on the materials provided by Plaintiff, the Court agrees as to the Red Hook claim only. The conduct of which Plaintiff complains did not begin until late December 2017, over ninth months after the EEOC investigation had commenced, and involved a "factually distinct discriminatory practice[]" compared to what Plaintiff alleged in his EEOC charge. *Wiley v. Citibank, N.A.*, No. 98-CV-1139, 2000 WL 122148, at *4 (S.D.N.Y. Feb. 1, 2000). The Red Hook facility owner's restriction on how Plaintiff entered work each day is not "reasonably related" to the array of other types of discrimination he alleges. By contrast, the constructive discharge claim is reasonably related to Plaintiff's EEOC charge. *See Guice-Mills v. Derwinski*, 772 F. Supp. 188, 200 (S.D.N.Y. 1991) (citation omitted), *aff'd*, 967 F.2d 794 (2d Cir. 1992). Plaintiff alleges he was constructively discharged "[d]ue to the Company's unwillingness to meaningfully address the unfair circumstances he has described," Compl. ¶ 55, which is based on "the same course of discrimination" described in his EEOC charge. *Blesedell v. Mobil Oil Co.*, 708 F. Supp. 1408, 1420 (S.D.N.Y. 1989). That the constructive discharge occurred after the filing of the EEOC charge is of no consequence, as the Court of Appeals has held that "district courts may assume jurisdiction over a claim 'reasonably related' to a charge filed with the EEOC, including incidents occurring after the filing of the EEOC claim." *Stewart v. U.S. I.N.S.*, 762 F.2d 193, 198 (2d Cir. 1985).

In sum, Plaintiff's constructive discharge claim is "reasonably related" to claims raised in his EEOC charge and is therefore exhausted, while Plaintiff's Title VII claims for retaliation and discrimination at the Red Hook facility appear to be unexhausted. As with Plaintiff's allegations lacking dates, however, Plaintiff will be given an opportunity to amend his complaint and indicate whether and when he pursued administrative remedies as to the Title VII claims for retaliation and discrimination at the Red Hook facility, keeping in mind that the time for pursuing these remedies must be consistent with the limitations set forth in 42 U.S.C. § 2000e–5(e)(1), as discussed above.

### III. Failure to State a Claim

Defendant next moves to dismiss all six causes of action in Plaintiff's claim for failure to state a claim. Defendant argues that Plaintiff has failed to state a claim for relief under Title VII or the NYCHRL. "[T]o defeat a motion to dismiss . . . in a Title VII discrimination case, a plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015). "[A]t the pleadings stage of an employment discrimination case, a plaintiff has a '*minimal* burden' of alleging facts 'suggesting an inference of discriminatory motivation'" for the adverse employment action. *Id.* at 85 (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 310 (2d Cir. 2015)) (emphasis in original). A plaintiff can meet his burden "through direct evidence of intent to discriminate or by indirectly showing circumstances giving rise to an inference of discrimination." *Id.* at 87 (citations omitted). "A plaintiff may prove discrimination indirectly either by . . . showing that the employer's stated reason for its employment action was pretext to cover-up discrimination, or by otherwise creating a 'mosaic' of intentional discrimination by identifying 'bits and pieces of evidence' that together give rise to an inference of discrimination." *Id.* (citations omitted).

12

Section 8–107(1)(a) of the NYCHRL makes it "an unlawful discriminatory practice . . . [f]or an employer or an employee or agent thereof, because of the . . . race [or] . . . national origin . . . of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment." N.Y.C. Admin. Code § 8–107(1)(a). Claims under the NYCHRL must be construed "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." *Albunio v. City of New York*, 16 N.Y.3d 472, 477–78 (2011). The Second Circuit has clarified that "[t]o prevail on liability, the plaintiff need only show differential treatment—that she is treated 'less well'—because of a discriminatory intent." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013).

Plaintiff fails to meet his burden under Title VII or even under the NYCHRL, as he has not plausibly alleged that race or national origin was a motivating factor in any of the employment decisions he describes. Plaintiff does not point to any "direct, smoking gun, evidence of discrimination," and instead attempts to "indirectly show[] circumstances giving rise to an inference of discrimination." *Vega*, 801 F.3d at 86. This indirect evidence, however, consists solely of three instances where Plaintiff alleges he was treated less favorably than employees without his protected status, and the details regarding these comparators are too vague to support the inference that Defendant intentionally treated them better than Plaintiff due to race or national origin. In the first instance, Plaintiff alleges he was locked out of the company's paycheck system for over two months, whereas "none of the white employees had been locked out of the system." Compl. ¶ 30. As discussed above, the Complaint does not make clear when this conduct occurred, and thus it is difficult to determine whether the claim is timely. *See* 42 U.S.C. § 2000e–5(e)(1). Even as "background evidence" in support of an otherwise timely-filed claim, however, this allegation is too general to support an inference of discriminatory intent. *Nat'l R.R. Passenger Corp.*, 536 U.S.

13

at 113. "[A]dverse actions taken against employees who are not similarly situated cannot establish an inference of discrimination," *Littlejohn*, 795 F.3d at 312, and Plaintiff has not alleged—let alone plausibly—that these white employees were similarly situated to him.

Second, Plaintiff alleges that he was denied full-time employment, only given three workdays on many occasions, and was unexpectedly forced to work on Saturdays, whereas "white employees were given overtime work." Compl. ¶ 31. Again, the Court has already found that Plaintiff has failed to demonstrate whether a claim based on this conduct is timely, as Plaintiff does not allege when this conduct occurred. *See* 42 U.S.C. § 2000e–5(e)(1). Even as background evidence, however, this allegation lacks the specificity necessary to compare these unidentified "white employees" to Plaintiff.

The only instance in the entire Complaint in which Plaintiff timely alleges discriminatory conduct appears in the section regarding denials of vacation time, where Plaintiff claims that in October 2016, "non-Hispanic and white drivers with less seniority than Plaintiff were given 4 to 6 weeks of vacation time." Compl. ¶ 42. The description of these comparators' lesser seniority is nonetheless insufficient to raise an inference that they were treated better on account of their race or national origin. "Although Plaintiff need not proffer evidence of a similarly situated comparator at this stage, the Court must still determine, based on the factual allegations in the Complaint, if it is plausible that a jury could determine that the comparators are similarly situated and that they were treated differently." *Rosario v. Town of Mount Kisco*, No. 16-CV-8766, 2018 WL 2209487, at *7 (S.D.N.Y. May 11, 2018). Based solely on the allegation that these employees had "less seniority" than Plaintiff and had lengthy vacation requests approved, it would not be plausible for a jury to determine that these comparators were "similarly situated in all material respects" and treated more favorably than Plaintiff. *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000) (internal quotation marks omitted). As the Court of Appeals explained in *Graham*:

14

> What constitutes "all material respects" . . . varies somewhat from case to case and . . . must be judged based on (1) whether the plaintiff and those he maintains were similarly situated were subject to the same workplace standards and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness. In other words, there should be an "objectively identifiable basis for comparability."

230 F.3d at 40 (citation omitted). Plaintiff's Complaint does not plausibly allege that he and the "white employees" who received favorable treatment were "subject to the same workplace standards," or that they were similarly situated at all. *Id.* For example, Plaintiff does not allege whether these non-Hispanic and white drivers had accumulated more vacation time than he had, whether they requested vacation time before he did, and/or whether they occupied the same professional roles as Plaintiff did for Defendant.

Apart from these three incidents, the Complaint alleges more generally that Defendant's "treatment of Hispanic employees was much different from its treatment of its white crew," with a list of examples such as: "Rules were more strictly enforced against Hispanic workers when compared to white employees." *Id.* ¶ 14; *see also id.* ¶¶ 15–18. These general allegations, too, cannot form the basis of a Title VII or NYCHRL discrimination claim, as they do not include any description of an adverse employment action against Plaintiff, let alone an action taken against him because he is Hispanic. In sum, nowhere in the entire Complaint—even including the numerous untimely allegations—does Plaintiff allege facts that establish that similarly situated employees were treated better than him based on race or national origin.[7] Plaintiff's race and national origin discrimination claims under Title VII and the NYCHRL are therefore dismissed.

---

[7] To the extent Plaintiff has raised a hostile work environment claim, it fails for similar reasons. "To establish a hostile work environment under Title VII . . . , a plaintiff must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Littlejohn*, 795 F.3d at 320–21 (citation omitted). "The incidents complained of must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." Even if a plaintiff is able to demonstrate "severe or pervasive" wrongdoing toward him at the workplace, "[i]t is axiomatic that the plaintiff also must show that the hostile conduct occurred because of a protected characteristic." *Tolbert v. Smith*, 790 F.3d 427, 439 (2d Cir. 2015). The only allegations in the Complaint that could even arguably support an inference of discriminatory intent in a hostile work environment claim, however,

## IV. NYCHRL retaliation claim

As Plaintiff's Title VII retaliation claim was not administratively exhausted and the discrimination claims have been dismissed, the only remaining claim to address is Plaintiff's NYCHRL retaliation claim, which is not subject to an exhaustion requirement. *See Hernandez v. New York City Dep't of Corp. Counsel*, No. 94-CV-9042, 1997 WL 27047, at *10 (S.D.N.Y. Jan. 23, 1997). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013) (citations and internal quotation marks omitted). The Court thus declines to exercise supplemental jurisdiction over Plaintiff's NYCHRL retaliation claim at this time. *See Dhar v. New York City Dep't of Transp.*, 630 F. App'x 14, 16 (2d Cir. 2015). To the extent Plaintiff amends his Complaint and the federal claims survive, the Court will revisit the issue of supplemental jurisdiction at that time.[8]

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is granted in its entirety. Within 30 days, Plaintiff may file an amended complaint, provided he has a good faith basis for doing so. Otherwise, the case will be closed and all of Plaintiff's claims will be deemed dismissed with

---

are those the Court has already found insufficient in the context of Plaintiff's race and national origin discrimination claims. *See, e.g., Hicks v. Rubin*, 6 F. App'x 70, 73 (2d Cir. 2001) (affirming dismissal of hostile work environment claim for "same reason" as disparate treatment claim where plaintiff failed to establish that supervisors' conduct toward plaintiff "was motivated by her race").

[8] As an alternative ground for dismissal, Defendant argues that Plaintiff's claims for discrimination and retaliation are preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a) ("LMRA"). As the Court has already dismissed all claims in Plaintiff's Complaint, it does not reach this argument. In the event Plaintiff refiles an amended complaint, however, the Court notes that only Plaintiff's city law claims are potentially subject to preemption. "Section 301 simply does not preempt Title VII claims; preemption of claims under other federal statutes is not necessary to ensure uniformity of adjudication." *Chopra v. Display Producers, Inc.*, 980 F. Supp. 714, 719 (S.D.N.Y. 1997) (Chin, J.).

prejudice. The Clerk of Court is respectfully directed to terminate the motion located at docket number 4.

SO ORDERED.

Dated:  August 2, 2019
        New York, New York

_____
Ronnie Abrams
United States District Judge