USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 10/29/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LEANDRO MEDINA,

           Plaintiff,

v.

WASTE CONNECTIONS OF NEW YORK, INC., WASTE CONNECTIONS OF NEW YORK, INC. AS A SUCCESSOR IN INTEREST, AND WASTE CONNECTIONS OF NEW YORK, INC. AS SUCCESSOR IN INTEREST TO PROGRESSIVE WASTE SOLUTIONS LTD. AND WASTE CONNECTIONS, INC.,

           Defendants.

No. 19-CV-291 (RA)

OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

    Plaintiff Leandro Medina's action against Defendant Waste Connections of New York, Inc., Waste Connections of New York, Inc. as successor in interest, and Waste Connections of New York, Inc. as successor in interest to Progressive Waste Solutions Ltd. and Waste Connections, Inc. (collectively, "Defendant" or "Waste Connections"), alleging violations of Title VII and the New York City Human Rights Law ("NYCHRL"), was removed to this Court on January 10, 2019. On August 2, the Court granted Defendant's motion to dismiss in its entirety. Plaintiff filed an amended complaint, which asserted a single cause of action under the NYCHRL for retaliation, along with a motion to remand the case because this Court "no longer has subject matter jurisdiction." Pl.'s Mot. to Remand at 3. Defendant subsequently filed a motion to dismiss, in which it opposed remand on the ground that, even though only an NYCHRL claim was presented, it is preempted by § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C.

§ 185(a), and the Court thus has federal-question jurisdiction. For the reasons set forth below, the Court grants Plaintiff's motion to remand, and denies Defendant's motion to dismiss as moot.

## BACKGROUND

The Court assumes the parties' familiarity with the underlying facts of this case, a detailed account of which is provided in the Court's August 2nd opinion granting Defendant's motion to dismiss. Only a summary of those facts directly relevant to the disposition of this motion to remand is included herein.

Plaintiff, a Hispanic-American truck driver, was an employee of Defendant from July 2015 to March 2018. According to the complaint, "[f]rom the beginning of his employment, Plaintiff noticed that the treatment of Hispanic employees was much different from its treatment of its white crew performing the same duties," who "had the same job titles and responsibilities" and "were subject to the same workplace standards." Am. Compl. ¶ 28-30. Plaintiff alleges that he and other Hispanic employees were subject to the following instances of discrimination as a result of their race and national origin:

- "Defendant strictly enforced rules and disciplined Hispanic employees, including the Plaintiff, for the same conduct for which white employees suffered no consequence." *Id.* ¶ 31.

- "White employees were not marked as 'no show' when they did not appear for work, whereas Hispanic employees, including Plaintiff, were always marked absent when they did not report for work." *Id.* ¶ 32.

- "White employees with similar or lesser seniority than Hispanic employees, including Plaintiff, were given the preferable and shortest routes compared to Hispanic employees" and "granted personal and vacation time without delay while Hispanic employees were made to wait and were denied such time." *Id.* ¶ 33-34.

- "Supervisors raised their voice and yelled at Hispanic employees while speaking in an ordinary voice to white employees." *Id.* ¶ 35.

- "Defendant often scheduled Plaintiff and other Hispanic employees to report to work on Holidays, but when they arrived, they were told there was no work and were not allowed to clock-in and were sent home, while the white employees with similar or lesser seniority were allowed to work." *Id.* ¶ 36.

Plaintiff reported this discriminatory conduct to his supervisors and Human Resources, beginning in 2015. He claims that, as a result, Defendant began to unlawfully retaliate against him. For instance, he was marked as a "no-show" and later fired for calling in sick. Although he was reinstated, he was not compensated for those lost workdays. Later, Plaintiff was designated – without his knowledge – as part-time, which resulted in the termination of his health insurance and denial of a wage increase. Moreover, Plaintiff was refused vacation time and forced to work on holidays "while less senior white employees were not required to do so." *Id.* ¶ 61. Finally, Plaintiff alleges that, as of December 2017, "he was prevented or delayed in entering the facility" because Defendant would not provide him transportation "from the outside gate of the facility to the place where Plaintiff is to clock-in and report to work." *Id.* at ¶ 63. Plaintiff claims that this "constant harassment, discrimination and retaliation . . . [made] it impossible for [him] to continue working for them," forcing him to resign in March 2018. *Id.* ¶ 64.

## DISCUSSION

### A. Preemption Under § 301 of the LMRA

Pursuant to the "well-plead complaint rule," federal courts only have federal-question jurisdiction if a federal question is properly plead on the face of the complaint. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392-93 (1987). An exception – or "independent corollary" – to this rule is the "complete pre-emption doctrine," which provides that certain statutes have the "pre-emptive force" to turn "even an ordinary state common-law complaint . . . into one stating a federal claim." *Id.* This doctrine is most commonly invoked in the context of § 301 of the LMRA, *id.* at 393-94, which states in relevant part:

3

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

Nonetheless, not every state-law claim complaint "concerning employment, or tangentially involving a provision of a collective-bargaining agreement" is necessarily preempted by § 301. *Wilds v. United Parcel Serv., Inc.*, 262 F. Supp. 2d 163, 173 (S.D.N.Y. 2003). "Although the Supreme Court has interpreted the preemptive scope of Section 301 broadly, the Court has repeatedly cautioned that 'it would be inconsistent with congressional intent under [section 301] to pre-empt state rules that . . . establish rights and obligations, independent of a labor contract.'" *Id.*; *see also Wynn v. AC Rochester*, 273 F.3d 153, 158 (2d Cir. 2001) (per curiam) (distinguishing "between claims requiring 'interpretation' of a CBA and those that merely require such an agreement to be 'consulted'"). To determine whether a claim is preempted by § 301, the focus is on the "legal character of a claim," *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994), and, more significantly, whether "the resolution of a state-law claim depends on an *interpretation* of the collective-bargaining agreement," *Foy v. Pratt & Whitney Grp.*, 127 F.3d 229, 232 (2d Cir. 1997). As such, a claim is not preempted by "the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation." *Livadas*, 512 U.S. at 124.

### B. Plaintiff's NYCHRL Claim is Not Preempted

Resolving Plaintiff's NYCHRL claim is not "depend[ent] upon the meaning of a collective-bargaining agreement," and thus it is not preempted by § 301. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405-05 (1988). The sole cause of action in the amended complaint alleges that Plaintiff was retaliated against in violation of the NYCHRL for reporting discriminatory conduct against him and other Hispanic employees. The NYCHRL provides that it is "an unlawful

discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has . . . opposed any practice forbidden under this chapter." N.Y.C. Admin. Code § 8-107(7). Accepting that Plaintiff engaged in protected activity by reporting race and national origin discrimination to his supervisors and Human Resources, the questions at issue in the case are whether the subsequent conduct by Defendant was adverse and causally connected to Plaintiff's complaints.

Plaintiff's allegations do not rely on – let alone address – the CBA. *See Okeke v. N.Y. & Presbyterian Hosp.*, 275 F. Supp. 3d 470, 486 (S.D.N.Y. 2017) (refusing to find plaintiff's discrimination claim preempted by § 301 in part because "the amended complaint makes absolutely no mention of the CBA"). The analysis and resolution of his NYCHRL retaliation claim depends primarily on "the employer's behavior, motivation, and statements, as well as [Plaintiff's] conduct." *Foy*, 127 F. 3d at 235. Required, at most, is mere reference to certain policies in the CBA. *See Wynn*, 273 F.3d at 158 (contrasting "reference to the face of the CBA" to determine what benefits an employee was entitled to from "interpretation of the CBA"). As the Second Circuit has held, however, this type of examination of a CBA does not provide the court with federal jurisdiction:

> Obviously, in reaching this conclusion, we have consulted the CBA. But the review of the CBA needed to decide preemption in this case is not in itself "interpretation" warranting preemption; if it were, the preemption doctrine under § 301 would swallow the rule that employees can assert nonnegotiable state law rights that are independent of their collective bargaining agreements.

*Foy*, 127 F.3d at 234.

Defendant's contention to the contrary, that resolution of Plaintiff's retaliation claim will require substantial reliance on or interpretation of the CBA, is meritless. First, neither party contests the meaning of any term in the CBA that would demand judicial interpretation. *Cf. Vera*

5

*v. Saks & Co.*, 335 F.3d 109, 116 (2d Cir. 2003) (holding that a claim is preempted by § 301 because the "complaint challenges the legality of a term of the CBA," which "will require substantial analysis of the CBA"). Defendant, moreover, overstates how much consultation of the CBA is needed. It insists, for example, that interpreting the CBA's sick leave provision is necessary to determine whether Plaintiff properly requested or was entitled to sick leave. *See* Def.'s Mot. to Dismiss at 13-14. But Plaintiff has merely alleged that he "filed for a 'sick day' following the proper Company procedure." Am. Compl. ¶ 41. Resolving this claim, therefore, necessitates *knowing* what the CBA's sick leave policy is, not *construing* it in any way.

Defendant further suggests the CBA is critical here because its conduct was justified pursuant to its policies, and thus not retaliatory. For instance, Defendant asserts that "[t]he CBA contains detailed provisions regarding management's right to direct the operations of the business," permitting it to deny Plaintiff transportation from the facility gate into the premises. Def.'s Mot. to Dismiss at 16. Similarly, Defendant cites several CBA provisions to explain Plaintiff's allegation that he was forced to work on holidays while "less senior white employees were not." Am. Compl. ¶ 61. Courts in this circuit, however, have rejected comparable arguments that review of a CBA to evaluate a defendant's alleged justifications is sufficient to warrant preemption. In *Wilds v. United Parcel Service, Inc.*, for example, the plaintiff similarly raised claims "predicated solely on the NYCHRL," "involv[ing] wrongful conduct, investigation, and termination." 262 F. Supp. 2d at 174. The defendants argued that the claim was preempted by § 301 because "a court will need to interpret the CBA because of the justification *they* advance for [the plaintiff's] termination." *Id.* at 180. Noting that while "[p]erhaps [the defendants] did terminate [the plaintiff] for a reason which properly fell within the scope of . . . the CBA," the court nonetheless held that it lacked federal-question jurisdiction because "[a]ny effort to resolve

the claims . . . will not hinge on that question." *Id.* at 180-81. Similarly, in *Shipkevich v. Staten Island University Hospital,* the defendants argued, in support of preemption, that "evaluating [plaintiff's] claim that he was treated differently with regard to salary raises, overtime assignments, disciplinary actions and termination because he is a Russian-American Jew requires determining what the CBA allowed or required his employer to do with respect to those types of actions." No. 08-CV-1008, 2009 WL 1706590, at *5 (E.D.N.Y. June 16, 2009). In rejecting this argument, the court concluded that "Shipkevich's 'claims turn[] mainly on the behavior and motivation of the employer, and not on interpretation of the meaning of the parties' labor agreement." *Id.*

Lastly, the Court notes that its decision to remand this case is consistent with prior decisions from courts in this circuit, which have expressed concern with giving § 301 an overly broad preemptive scope over state-law discrimination and retaliation claims. Indeed, the Second Circuit has cautioned that allowing § 301 to encompass too many state-law claims could "have the effect of granting less state law protection to employees governed by collective bargaining agreements than to other employees." *Baldracchi v. Pratt & Whitney Aircraft Div.*, 814 F.2d 102, 107 (2d Cir. 1987). Since then, courts have continued to emphasize the distinction between pure state-law discrimination claims and claims predicated on a CBA. *See, e.g., Langford v. Int'l Union of Operating Eng'rs,* 765 F. Supp. 2d 486, 506 (S.D.N.Y. 2011) ("It is 'clear . . . that the claim of *discrimination* does not necessarily require interpretation of [a collective-bargaining agreement]."); *Bryant v. Verizon Commc'ns,* 550 F. Supp. 2d 513, 529 (S.D.N.Y. 2008) ("[T]he right to be free from such discrimination arises from state law, not from the CBA, and it is a non-negotiable right."). As such, numerous courts in this district have declined to find New York State Human Rights Law ("NYSHRL") claims, an analogous provision to the NYCHRL, preempted by § 301 because "an inquiry into whether the elements of an NYHRL discrimination claim or the

7

defenses thereto had been satisfied would not require any interpretation of a contractual term in a collective-bargaining agreement." *See Wilds*, 262 F. Supp. 2d at 182 (collecting cases).

Accordingly, because Plaintiff's NYCHRL retaliation claim does not "substantially depend[] on analysis of [the] collective-bargaining agreement," *Caterpillar Inc.*, 482 U.S. at 395, the Court rejects Defendant's argument that there is federal-question jurisdiction. And in light of the Court's previous decision to decline to exercise supplemental jurisdiction because "the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – . . . point toward declining to exercise jurisdiction over the remaining state-law claims," *Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013), Plaintiff's motion is granted.

## CONCLUSION

For the foregoing reasons, the Court grants Plaintiff's motion to remand, and denies Defendant's motion to dismiss as moot. The Clerk of Court is respectfully directed to terminate the motions at docket entries 27 and 31, and close the case.

Dated: October 29, 2019
New York, New York

Ronnie Abrams
United States District Judge